**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**AMY NEGRON f/k/a OFFICER AMY O'BRIEN,**

                **Plaintiff,**

       v.                                    1:08-CV-692
                                               (FJS/RFT)

**ULSTER COUNTY; PAUL J. VANBLARCUM,**
in his official capacity as Sheriff of the County of
Ulster, and individually; **RICHARD J.**
**BOCKELMANN**, in his official capacity as Sheriff
of the County of Ulster, and individually;
**BRADFORD EBEL**, in his official capacity as
Superintendent of the Ulster County Jail, and
individually; **RAY ACEVEDO**, in his official
capacity as Deputy Superintendent of the Ulster
County Jail, and individually; and **PAUL**
**WESOLOWSKI**, in his official capacity as a
member of the Ulster County Sheriff's Department,
and individually,

                **Defendants.**
_____

**APPEARANCES**                                  **OF COUNSEL**

**BONACIC, KRAHULIK, CUDDEBACK,**     **JOSEPH J. RANNI, ESQ.**
**McMAHON & BRADY, LLP**
90 Crystal Run Road, Suite 104
Middletown, New York 10941
Attorneys for Plaintiff

**ROEMER, WALLENS, GOLD &**           **EARL T. REDDING, ESQ.**
**MINEAUX, LLP**                            **MATTHEW J. KELLY, ESQ.**
13 Columbia Circle
Albany, New York 12203
Attorneys for Defendants Ulster County, Van
Blarcum, Bockelmann, Ebel and Acevedo

**SUSSMAN & WATKINS**                    **CHRISTOPHER D. WATKINS, ESQ.**

<div style="float:left">55 Main Street<br>Goshen, New York 10924<br>Attorneys for Defendant Wesolowski</div>  **MICHAEL H. SUSSMAN, ESQ.**

**SCULLIN, Senior Judge**

## MEMORANDUM-DECISION AND ORDER

## I. INTRODUCTION

On June 30, 2008, Plaintiff filed this action pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 1983, and the New York State Human Rights Law ("NYSHRL"). Pursuant to Title VII, Plaintiff alleged (1) sexual discrimination, (2) *quid pro quo* sexual harassment, (3) hostile work environment,[1] (4) disparate impact discrimination, and (5) retaliation. *See* Complaint at ¶¶ 86-111. Pursuant to the NYSHRL, Plaintiff alleged that Defendants[2] subjected her to "discriminatory, harassing, reckless, wrongful[,] willful and malicious treatment," which resulted in the denial of equal opportunity in her employment and that Defendants retaliated against her. *See id.* at ¶¶ 112-25. Finally, Plaintiff alleged that, pursuant to 42 U.S.C. § 1983, Defendants violated her civil rights and that, pursuant to New York State law, Defendants' treatment of her constituted negligent infliction of emotional distress. *See id.* at ¶¶ 126-136.

Currently pending before the Court is Defendants' motion for summary judgment on all of the above-mentioned claims.[3] On August 27, 2010, the Court heard argument in support of

---

[1] Although Plaintiff's first cause of action alleges a Title VII "discrimination" claim, she has merely set forth a claim for hostile work environment. As such, the Court has treated Plaintiff's first and third causes of action as one cause of action.

[2] Defendant Wesolowski is represented by separate counsel and did not bring a motion for summary judgment. Therefore, throughout this Memorandum-Decision and Order, any reference to "Defendants" refers to all Defendants except Defendant Wesolowski.

[3] Although Defendants claim in their Notice of Motion that they are seeking dismissal of
(continued...)

and in opposition to the current motion.  The Court granted Defendants' motion with respect to Plaintiff's *quid pro quo* cause of action but reserved decision as to the remainder of the motion.  The following constitutes the Court's decision regarding the same.

## II. BACKGROUND[4]

Plaintiff was employed as a corrections officer with Defendant Ulster County in the "old" prison located at Golden Hill and subsequently at the new jail following its completion in 2007.  Plaintiff was first employed as a corrections officer from September 1998 to December 2003, during which time the then-superintendent promoted her to corporal.  Thereafter, Plaintiff left her employment with Defendant Ulster County for a full-time position with the Town of Ulster but returned as a corrections officer in December of 2003.[5]  When Plaintiff returned to Defendants' employ, she no longer enjoyed the rank of corporal.

Plaintiff alleges that, throughout her employment, Defendants subjected her and other female coworkers to "severe and pervasive sexual harassment that included sexual solicitations,

---

[3](...continued)
all pending claims, they fail to discuss Plaintiff's negligent infliction of emotional distress claim (Count IX) and provide only a conclusory statement in the attorney affidavit regarding Defendant Wesolowski's cross-claims.  Accordingly, the Court denies Defendants' motion for summary judgment with respect to Count IX and Defendant Wesolowski's cross-claims.

[4] Initially, Defendants failed to submit a statement of material facts ("Rule 7.1 Statement") with their motion for summary judgment.  On June 10, 2010, Defendants requested the Court's permission to file a late statement of material facts.  The Court granted the motion, giving Defendants until June 24, 2010, to file their statement.  Defendants, however, did not submit their Rule 7.1 Statement until July 8, 2010.  *See* Dkt. No. 105.

[5] Plaintiff seems to have confused her dates in both her Rule 7.1 Statement and her complaint.  In her Rule 7.1 Statement, she claims that she left in December 2003 but returned in 1998.  *See* Dkt. No. 95 at ¶ 1.  In the complaint, Plaintiff alleges that she both left and returned to Defendant Ulster County's employ in December 2003.  *See* Complaint at ¶¶ 26-27.

jokes, comments, remarks and innuendo[.]" *See* Plaintiff's Statement of Material Facts at ¶ 3. Further, Plaintiff asserts that, although she "would participate in some conversation, jokes and remarks, sexual content and communication were persistent throughout the jail." *See id.* Moreover, she claims that disparities existed between the assignments and punishments given to male and female corrections officers and that she was passed over for promotion because of her sex. *See id.* at ¶ 6. Finally, Plaintiff alleges that Defendant Wesolowski "physically and forcibly assaulted" her in a sexual manner. *See id.* at ¶¶ 16-18. Plaintiff asserts that Defendants failed to respond appropriately to her complaints and those of others regarding this behavior.

On February 1, 2006, Plaintiff filed a complaint with the Equal Employment Opportunity Commission ("EEOC") and the New York State Division of Human Rights. *See* Affirmation of Joseph J. Ranni dated May 25, 2010 ("Ranni Aff."), at Exhibit "2." In her complaint, Plaintiff claimed disparate impact and treatment relating to a sexually hostile and gender discriminatory environment and that she suffered repeated sexual assaults by her commanding officer. *See id.* at 1. On January 9, 2008, the EEOC issued a probable cause determination, finding "that there is reason to believe that violations have occurred[.]" *See id.* at Exhibit "3," at 2.[6]

### III. DISCUSSION

---

[6] In addition to the present matter, Officers Patricia Meadors, Anne Marie Legg, Patricia Watson, and Nancy Reyes have filed EEOC complaints against Defendant Ulster County, alleging substantially similar conduct to that which Plaintiff alleges. *See* Ranni Aff. at ¶¶ 5-8. In each instance, the EEOC made a probable cause determination in the complainant's favor. *See id.*

### A.     Summary judgment standard

A court may grant a motion for summary judgment only if "the court determines that there is no genuine issue of material fact to be tried and that the facts as to which there is no such issue warrant judgment for the moving party as a matter of law." *Chambers v. TRM Copy Ctrs. Corp.*, 43 F.3d 29, 36 (2d Cir. 1994) (citations omitted).  When analyzing a summary judgment motion, the court "'cannot try issues of fact; it can only determine whether there are issues to be tried.'"  *Id.* at 36-37 (quotation and other citation omitted).

Furthermore, in assessing the record to determine whether any such issues of material fact exist, the court is required to resolve all ambiguities and draw all reasonable factual inferences in favor of the nonmoving party.  *See id.* at 36 (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S. Ct. 2505, 2513-14, 91 L. Ed. 2d 202 (1986)) (other citations omitted). Where the non-movant either does not respond to the motion or fails to dispute the movant's statement of material facts, the court may not rely solely on the moving party's statement of material facts; rather, the court must be satisfied that the citations to evidence in the record support the movant's assertions.  *See Giannullo v. City of N.Y.*, 322 F.3d 139, 143 n.5 (2d Cir. 2003).

The Second Circuit has cautioned that summary judgment is often inappropriate in cases where the trier of fact will have to delve into an employer's intent because intent is an issue as to which direct evidence is rarely available.  *See Gallo v. Prudential Residential Servs. Ltd. P'ship*, 22 F.3d 1219, 1224 (2d Cir. 1994) (citations omitted); *Patrick v. LeFevre*, 745 F.2d 153, 159 (2d Cir. 1984) (citations omitted).  However, when an employer has explained its conduct and the plaintiff has offered only conclusory assertions in opposition, a court may grant summary

judgment. *See Meiri v. Dacon*, 759 F.2d 989, 998 (2d Cir. 1985).

### B.     Plaintiff's Title VII sexual harassment claim[7]

Defendants assert that the Court should grant their motion for summary judgment because Plaintiff admitted that she participated in the activities creating the allegedly hostile work environment; and, therefore, she cannot now complain about it. *See* Dkt. No. 86-20 at 1. Further, they assert that there is no specific basis for imputing the conduct that created the alleged hostile environment on the employer. *See id.* at 3. Defendants claim that, because low-level employees created the alleged hostile situation, the employer can only be liable if it provided no reasonable avenue for complaint or knew of the harassment but did nothing to stop it. *See id.* at 3-4 (citation omitted). Defendants claim that they had a complaint system in effect which Plaintiff failed to use and that they had no prior knowledge of this alleged hostile environment because Plaintiff failed to complain. *See id.* at 4.

A work environment is "discriminatorily hostile" when (1) "the workplace is permeated with 'discriminatory intimidation, ridicule, and insult,' . . . that is 'sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment,'" *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993) (quotations omitted), and (2) "'a specific basis exists for imputing the conduct that created the hostile environment to the employer[,]'" *Schwapp v. Town of Avon*, 118 F.3d 106, 110 (2d Cir. 1997) (quotation omitted); *see also McGullam v. Cedar Graphics, Inc.*, 609 F.3d 70, 79 n.6 (2d Cir. 2010) (quotations omitted). However, when "the alleged harasser is in a supervisory position over the plaintiff, the

---

[7] Under Title VII, a plaintiff may only hold her employer liable, not individual employees.

objectionable conduct is automatically imputed to the employer." *Gorzynski v. Jetblue Airways Corp.*, 596 F.3d 93, 103 (2d Cir. 2010) (citations omitted). Even then, however, the employer may avoid liability by establishing, by a preponderance of the evidence, that "(1) 'the employer exercised reasonable care to prevent and correct promptly any [discriminatory] harassing behavior,' and (2) 'the plaintiff employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise.'" *Id.* (quotations omitted).

In contrast, if co-workers, or a low-level supervisor who does not rely on his supervisory authority in carrying out the harassment, create the hostile work environment, liability attaches to the employer only when the employer has "either provided no reasonable avenue for complaint or knew of the harassment but did nothing about it." *Kotcher v. Rosa & Sullivan Appliance Ctr., Inc.*, 957 F.2d 59, 63 (2d Cir. 1992) (citation omitted). An employer who knew, "or in the exercise of reasonable care should have known," of a discriminatorily abusive environment in the workplace has a duty to take reasonable steps to eliminate it. *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 768 (1998) (citations omitted); *see also Snell v. Suffolk County* 782 F.2d 1094, 1104 (2d Cir. 1986).

To sustain a hostile work environment claim under Title VII, the plaintiff must demonstrate that the harassing conduct was "of such quality or quantity that a reasonable employee would find the conditions of her employment altered for the worse," and the victim must also subjectively perceive the environment as abusive. *Torres v. Pisano*, 116 F.3d 625, 632 (2d Cir. 1997) (citation omitted). A plaintiff must demonstrate a series of sufficiently continuous and concerted incidents that altered the conditions of her working environment; however, even a

single incident may suffice if the incident was "extraordinarily severe." *Cruz v. Coach Stores, Inc.*, 202 F.3d 560, 570 (2d Cir. 2000) (citation omitted). When a district court evaluates whether a plaintiff's allegations are sufficient to sustain a hostile work environment sexual harassment claim, it considers the following factors: "(1) the frequency of the discriminatory conduct; (2) its severity; (3) whether the conduct was physically threatening or humiliating, or a 'mere offensive utterance;' (4) whether the conduct unreasonably interfered with plaintiff's work; and (5) what psychological harm, if any, resulted." *Richardson v. N.Y.S. Dep't of Corr. Servs.*, 180 F.3d 426, 437 (2d Cir. 1999), *abrogated on other grounds by Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53 (2006) (quotation and other citation omitted).

Plaintiff has alleged facts sufficient to survive a motion for summary judgment on her hostile work environment cause of action. Plaintiff asserts that co-workers, superior officers, and specifically, Defendant Wesolowski, intentionally and repeatedly harassed her and other female co-workers and that her employer knew or should have known about the harassing conduct because of its pervasiveness. *See* Complaint at ¶¶ 28-30. Although Plaintiff admits that she did not file formal complaints about the alleged hostile work environment prior to filing her complaint regarding Defendant Wesolowski's alleged assault, the pervasiveness of the work environment's hostility is demonstrated by the four probable cause determinations that the EEOC issued on November 26, 2008, relating to claims that Plaintiff's female co-workers had filed, in which they alleged substantially similar conduct to that which Plaintiff alleged. *See* Ranni Aff. at ¶¶ 5-8.

Further, although Plaintiff admits that she did occasionally participate in sexually charged banter and discussion, evaluation of ambiguous acts, such as those that the potential

-8-

evidence in this case reveals, presents an issue for the jury. *See Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 81-82 (1998) (holding that "[t]he real social impact of workplace behavior often depends on a constellation of surrounding circumstances, expectations, and relationships which are not fully captured by a simple recitation of the words used or the physical acts performed[;] [c]ommon sense, and an appropriate sensitivity to social context [are required]"); *see also Carr v. Allison Gas Turbine Div., Gen. Motors Corp.*, 32 F.3d 1007, 1011 (7th Cir. 1994) (holding that the plaintiff's "unladylike" behavior, which included using profane language and viewing a pornographic picture that a male co-worker brought to work, could not be used to justify her co-employees' conduct, which was considerably more severe and directed at the plaintiff, and could not be used to exonerate the employer from liability (citing *Karibian v. Columbia Univ.*, 14 F.3d 773, 778 (2d Cir. 1994)) (other citations omitted).

Moreover, although Plaintiff admits that Defendants acted appropriately in responding to Defendant Wesolowski's alleged assault, she has alleged a multitude of other incidents which, if believed, could amount to a hostile work environment. Finally, Defendant Van Blarcum's callous and indifferent responses to deposition questions regarding the environment in his prison could lead a fact finder to determine that Plaintiff did not have a reasonable avenue of complaint.[8]

---

[8] During Defendant Van Blarcum's deposition, he was asked whether he took any action regarding the EEOC's finding that his female employees were "'subjected to a hostile work environment including but not limited to severe and pervasive sexual harassment'" and that he failed to "'take reasonable care to prevent or correct discrimination in the workplace.'" *See* Dkt. No. 96-48 at 42. In response, Defendant Van Blarcum stated that he took no action with regard to the EEOC's findings because "we did not agree with the commission's investigation." *See id.* Further, he stated that he did not agree with the EEOC's decision "[b]ecause I do not think that anybody was ever retaliated against and I didn't think that there was a hostile work environment,
(continued...)

Based on the foregoing, the Court denies Defendants' motion for summary judgment as to Plaintiff's hostile work environment claim.

**C.    Plaintiff's Title VII disparate treatment claim[9]**

As previously mentioned, in their Notice of Motion, Defendants assert that they are seeking to dismiss all pending claims. However, in their memorandum of law, Defendants did not address Plaintiff's disparate treatment claim. Although Defendants addressed this claim during oral argument, Plaintiff has raised a number of issues that give rise to an inference of disparate treatment, including (1) receiving unfavorable placements; (2) not receiving special assignments over less-qualified male co-workers; and (3) not being promoted to corporal. *See* Plaintiff's Statement of Material Facts at ¶ 6.

Accordingly, because issues of fact exist, the Court denies Defendants' motion for summary judgment as to Plaintiff's disparate treatment claim.

**D.    Plaintiff's Title VII retaliation claim**

Title VII prohibits employers from discriminating against an employee who "has opposed any practice made an unlawful employment practice" or "has made a charge, testified, assisted,

---

[8](...continued)
still don't, and I don't think that we had done anything wrong." *See id.* Moreover, he stated that he did not make any effort to determine whether or not any of the EEOC's determinations were correct. *See id.* at 43.

[9] Although Plaintiff states that her fourth cause of action alleges "disparate impact," it is clear that she is actually alleging a Title VII disparate treatment claim. Disparate treatment claims involve discrimination resulting from an improper motive, which Plaintiff has clearly alleged here. Plaintiff has not alleged, as disparate impact claims require, that, although Defendants did not deliberately discriminate against her, she nonetheless suffered discrimination.

or participated in any manner in an investigation, proceeding, or hearing[.]" 42 U.S.C. § 2000e-3(a).  Courts analyze claims of retaliation pursuant to Title VII according to the burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).  *See Terry v. Ashcroft*, 336 F.3d 128, 141 (2d Cir. 2003) (citation omitted).

To make out a *prima facie* case of retaliation under Title VII, a plaintiff must adduce evidence sufficient to permit a rational trier of fact to find "'(1) that [s]he engaged in protected participation or opposition under Title VII . . . , (2) that the employer was aware of this activity, (3) that the employer took adverse action against the plaintiff, and (4) that a causal connection exists between the protected activity and the adverse action, *i.e.*, that a retaliatory motive played a part in the adverse employment action.'"  *See Kessler v. Westchester County Dep't of Soc. Servs.*, 461 F.3d 199, 205-06 (2d Cir. 2006) (quotation and other citations omitted).

The Supreme Court explained in *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53 (2006), that the definition of "adverse action" in the retaliation context is broader than that applicable to a Title VII discrimination claim.  *See id.* at 66.  In Title VII retaliation cases, an "adverse action" is established where "a reasonable employee would have found the challenged action materially adverse, 'which in this context means it well might have "dissuaded a reasonable worker from making or supporting a charge of discrimination."'"  *Id.* at 68 (quotation omitted).  A court will consider the challenged action material if it is "likely 'to deter victims of discrimination from complaining to the EEOC,' the courts, and their employers."  *Id.* (quotation omitted).

Once a plaintiff establishes a *prima facie* case of retaliation under Title VII, the burden then shifts to the employer to articulate a legitimate, nondiscriminatory reason for its actions.  If

-11-

the employer does so, the presumption of retaliation disappears; and the burden shifts back to the plaintiff to prove that the employer's stated reason is merely a pretext for its true, retaliatory motive. *See Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 142-43 (2000) (citations omitted). Although intermediate evidentiary burdens shift back and forth under this framework, the ultimate burden of persuasion "'remains at all times with the plaintiff.'" *Id.* at 143 (quotation omitted).

Contrary to Defendants' assertions, Plaintiff has raised issues of fact as to whether she suffered adverse employment actions. Plaintiff asserts that she was assigned to one of the pods in the jail that did not have restroom facilities because she filed a complaint with the EEOC. Further, Plaintiff asserts that, as a result of her "complaints to superior officers that Sgt. Ferro was alone in a dark room on September 8, 2008, with a female rookie subordinate, . . . she was denied a day off she had recently requested and continuously assigned to the male 'H' pod which does not have female bathroom facilities." *See* Dkt. No. 95 at ¶ 6. Moreover, Plaintiff alleges that she was subjected to an internal affairs and criminal investigation in April 2009, in which Defendants alleged that she had engaged in a sexual encounter with an inmate seven years earlier, during her first period of employment as a corrections officer. *See id.* at ¶ 12. She asserts that Sgt. Christopher Ferro solicited the report from the inmate and "received" a written statement from the inmate only six months after Plaintiff's complaint regarding Sgt. Ferro's encounter with the female rookie subordinate. *See id.* Defendants discontinued this investigation nine months later after the inmate failed to produce naked pictures he claimed to have of Plaintiff. *See id.* at ¶ 13.

Although Plaintiff fails to address the above points with any specificity in her opposition

to Defendants' motion for summary judgment, the parties' oral arguments and the record make clear that there are issues of fact regarding Plaintiff's retaliation claim. Accordingly, the Court denies Defendants' motion for summary judgment as to Plaintiff's Title VII retaliation claim.

**E.     Plaintiff's claims of discrimination under the NYSHRL[10]**

Courts analyze a plaintiff's discrimination claim under New York State Executive Law § 296 under the same standard as her Title VII discrimination claim. *See Uddin v. City of N.Y.*, No. 07 Civ. 1356, 2009 WL 2496270, *26 (S.D.N.Y. Aug. 13, 2009) (citations omitted). However, unlike Title VII, the NYSHRL allows the imposition of personal liability on supervisory employees and co-workers in limited circumstances. *See Feingold v. New York*, 366 F.3d 138, 157-58 (2d Cir. 2004) (citation omitted).

The NYSHRL defines "employer" in terms of the number of persons employed and "provides no clue to whether individual employees of a corporate employer may be sued under its provisions." *Patrowich v. Chem. Bank*, 63 N.Y.2d 541, 543 (1984) (citation omitted). In *Patrowich*, however, the New York Court of Appeals held that an employee is not individually subject to suit under section 296 as an "employer" if he is not "shown to have any ownership interest or power to do more than carry out personnel decisions made by others[.]" *Id.* at 543-44; *see also Gentile v. Town of Huntington*, 288 F. Supp. 2d 316, 321 (E.D.N.Y. 2003) (holding that a supervisor may be held liable as an "employer" if he has "the authority to 'hire and fire'

---

[10] Plaintiff failed to respond to Defendants' motion for summary judgment with respect to her NYSHRL discrimination and retaliation claims. Although the same burden shifting analysis applies to claims brought under New York Executive Law § 296, section 296 does not bar those claims that arose more than 300 days prior to Plaintiff's EEOC filing. *See Uddin v. City of N.Y.*, No. 07 Civ. 1356, 2009 WL 2496270, *26 (S.D.N.Y. Aug. 13, 2009) (citations omitted). A three-year statute of limitations applies to such claims arising under New York law. *See id.*

employees" (quotation omitted)).

However, section 296(6) of the NYSHRL states that it shall be an unlawful discriminatory practice "for any person to aid, abet, incite, compel or coerce the doing of any of the acts forbidden under this article, or to attempt to do so." N.Y. Exec. Law § 296(6). Based on this language, the Second Circuit has held that "a co-worker who 'actually participates in the conduct giving rise to a discrimination claim' [may] be held liable under the NYSHRL even though that co-worker lacked the authority to either hire or fire the plaintiff." *Feingold*, 366 F.3d at 158 (citation and footnote omitted).

Here, each named Defendant, with the exception of Defendant Wesolowski, was or is a highly ranked prison or county official.[11] Such high ranking officials clearly have the authority to do more than simply carry out someone else's personnel decisions.

Accordingly, the Court denies Defendants' motion for summary judgment with respect to Plaintiff's NYSHRL discrimination claim.[12]

## F.   Plaintiff's claim under 42 U.S.C. § 1983[13]

Defendants assert that the Court should dismiss Plaintiff's section 1983 claim because

---

[11] Defendant Van Blarcum is Sheriff; Defendant Bockelmann is Sheriff; Defendant Ebel is Superintendent of Ulster County Jail; Defendant Acevedo is Deputy Superintendent of Ulster County Jail.

[12] For the same reasons, the Court denies Defendants' motion for summary judgment with respect to Plaintiff's NYSHRL retaliation claim.

[13] Plaintiff's complaint does not provide the Court with any guidance as to which of her constitutional rights Defendants allegedly violated. She merely states that "[b]y reason of the foregoing, defendants' discriminatory treatment of plaintiff was in violation of 42 U.S.C. § 1983." *See* Complaint at ¶ 127. Based on the other allegations contained in the complaint, it appears to the Court that Plaintiff is seeking to allege an Equal Protection cause of action.

Plaintiff has failed to set forth that she suffered any damages as a result of their actions.  Further, Defendants claim that Defendants Van Blarcum and Bockelmann would be entitled to qualified immunity.  *See* Dkt. No. 86-20 at 10.

Section 1983 imposes liability for "conduct which 'subjects, or causes to be subjected' the complainant to a deprivation of a right secured by the Constitution and laws."  *Rizzo v. Goode*, 423 U.S. 362, 370-71 (1976) (quoting 42 U.S.C. § 1983).  Not only must the conduct deprive the plaintiff of rights and privileges secured by the Constitution, but the actions or omissions attributable to each defendant must be the proximate cause of the injuries and consequent damages that the plaintiff sustained.  *See Brown v. Coughlin*, 758 F. Supp. 876, 881 (S.D.N.Y. 1991) (citing *Martinez v. California*, 444 U.S. 277, 100 S. Ct. 553, 62 L. Ed. 2d 481*, reh. denied,* 445 U.S. 920, 100 S. Ct. 1285, 63 L. Ed. 2d 606 (1980)).  As such, for a plaintiff to recover in a section 1983 action, she must establish a causal connection between the acts or omissions of each defendant and any injury or damages she suffered as a result of those acts or omissions.  *See id.* (citing *Givhan v. Western Line Consol. Sch. Dist.*, 439 U.S. 410, 99 S. Ct. 693, 58 L. Ed. 2d 619 (1979)) (other citation omitted).

Ordinarily, "[t]o state a claim for an equal protection violation, [the plaintiff] must allege that a government actor intentionally discriminated against [her] on the basis of race, national origin or gender."  *Hayden v. County of Nassau*, 180 F.3d 42, 48 (2d Cir. 1999).  The plaintiff must allege that she was "selectively treated" as "compared with others similarly situated" based on "impermissible considerations" such as gender or with the "intent to inhibit or punish the exercise of constitutional rights[.]"  *Giordiano v. City of N.Y.*, 274 F.3d 740, 750-51 (2d Cir. 2001) (quotations and other citations omitted).

In the present matter, Plaintiff has alleged that Defendants discriminated against her on the basis of her gender, in comparison to similarly-situated men. She alleges that Defendants promoted other men over her and other women who were more deserving of the promotion; that Defendants gave more favorable assignments to similarly-situated men over her and other more highly deserving women; and that Defendants subjected male corrections officers to less harsh disciplinary measures than those that they imposed on similarly-situated female officers. *See* Dkt. No. 95 at ¶¶ 6, 8, 12-14.

Further, although Defendant Bockelmann may be entitled to summary judgment, as Defendants claim, Defendant Van Blarcum clearly is not. During Defendant Van Blarcum's deposition, he was asked whether he took any action regarding the EEOC's finding that his female employees were "'subjected to a hostile work environment including but not limited to severe and pervasive sexual harassment'" and that he failed to "'take reasonable care to prevent or correct discrimination in the workplace.'" *See* Dkt. No. 96-48 at 42. In response, Defendant Van Blarcum answered that he took no action with regard to the EEOC's findings because "we did not agree with the commission's investigation." *See id.* Further, he stated that he did not agree with the EEOC's decision "[b]ecause I do not think that anybody was ever retaliated against and I didn't think that there was a hostile work environment, still don't, and I don't think that we had done anything wrong." *See id.* Moreover, he responded that he did not make any effort to determine whether or not any of the EEOC's determinations were correct. *See id.* at 43.

Considering the fact that many of Plaintiff's allegations involve conduct following the EEOC's determination, it is clear that Defendant Van Blarcum is not entitled to qualified immunity. Moreover, although Defendant Bockelmann may be entitled to qualified immunity

eventually, it is premature at this time, particularly in light of Defendants' failure to provide the Court with specific reasons for granting Defendant Bockelmann qualified immunity.

Moreover, Defendant Van Blarcum and Defendant Bockelmann, as Ulster County Sheriffs, are clearly policy makers for the County; and, therefore, the Court should not dismiss Plaintiff's claim under *Monell v. Dep't of Soc. Servs.* 436 U.S. 658 (1978). *See Leather v. Ten Eyck*, 2 Fed. Appx. 145, 149 (2d Cir. 2001) (citations omitted).

Based on the foregoing, the Court denies Defendants' motion as to Plaintiff's section 1983 claim.

### IV. CONCLUSION

After carefully reviewing the entire record in this matter, the parties' submissions and oral arguments, and the applicable law, and for the above-stated reasons, the Court hereby

**ORDERS** that Defendants' motion for summary judgment is **GRANTED** in part and **DENIED** in part.[14]

**IT IS SO ORDERED.**

Dated: November 4, 2010
       Syracuse, New York

_____
Frederick J. Scullin, Jr.
Senior United States District Court Judge

---

[14] As a result of this Memorandum-Decision and Order, all of Plaintiff's causes of action remain, with the exception of her Title VII *quid pro quo* sexual harassment claim.