**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

---

**AMY NEGRON,**

**Plaintiff,**

**v.** **1:08-CV-692 (FJS/RFT)**

**ULSTER COUNTY; PAUL J. VAN BLARCUM, in his official capacity as Sheriff of the County of Ulster and individually; RICHARD J. BOCKELMANN, in his official capacity as Sheriff of the County of Ulster and individually; and PAUL WESOLOWSKI, in his official capacity as a member of the Ulster County Sheriff's Department, and individually,**

**Defendants.**

---

| **APPEARANCES** | **OF COUNSEL** |
| --- | --- |
| **RANNI LAW FIRM**<br>148 North Main Street<br>Florida, New York 10921<br>Attorneys for Plaintiff | **JOSEPH J. RANNI, ESQ.** |
| **JACOBOWITZ & GUBITS, LLP**<br>158 Orange Avenue<br>Walden, New York 12586-0367<br>Attorneys for Plaintiff | **ROBERT E. DINARDO, ESQ.**<br>**MICHAEL L. FOX, ESQ.** |
| **ROEMER WALLENS GOLD & MINEAUX LLP**<br>13 Columbia Circle<br>Albany, New York 12203<br>Attorneys for Defendants Ulster County, Van Blarcum and Bockelmann | **MATTHEW J. KELLY, ESQ.**<br>**EARL T. REDDING, ESQ.** |

**SUSSMAN & WATKINS**
55 Main Street, Suite 6
P.O. Box 1005
Goshen, New York 10924
Attorneys for Defendant
Wesolowski

**MICHAEL H. SUSSMAN, ESQ.**
**CHRISTOPHER D. WATKINS, ESQ.**

**SCULLIN, Senior Judge**

## MEMORANDUM-DECISION AND ORDER

## I. INTRODUCTION

Currently before the Court are Plaintiff's request for affirmative prospective relief and her motion for an award of attorney's fees. *See* Dkt. Nos. 176, 177, 220. The County Defendants oppose both of these motions.

## II. BACKGROUND

The Court presided over an eight-day jury trial of this matter. At the end of the trial, the jury awarded Plaintiff damages against Defendant Ulster County in the amount of $40,000.00 on her Title VII hostile work environment claim, $40,000.00 on her Title VII disparate treatment claim, and $10,000.00 on her Title VII retaliation claim. In addition, the jury awarded Plaintiff damages in the amount of $30,000.00 against Defendant Van Blarcum, $30,000.00 against Defendant Bockelmann, $15,000.00 against Defendant Wesolowski, and $300,000.00 against Defendant Ulster County on her equal protection hostile work environment and disparate treatment claims under 42 U.S.C. § 1983. Finally, the jury awarded Defendant Wesolowski $35,000.00 in compensatory damages and found that he was also entitled to punitive damages, in an amount to be determined, on his Fourteenth Amendment malicious prosecution cross-claim

against Defendant Bockelmann.

On October 31, 2011, Defendants Ulster County, Van Blarcum, and Bockelmann (the "County Defendants") moved for judgment as a matter of law or, in the alternative, for a new trial on all claims on which the jury had found them liable. *See* Dkt. No. 171. Plaintiff and Defendant Wesolowski opposed the County Defendants' motion. *See* Dkt. Nos. 191, 186.

In a Memorandum-Decision and Order dated August 20, 2012, the Court granted the County Defendants' motion for judgment as a matter of law with respect to Plaintiff's Title VII disparate treatment and retaliation claims, Plaintiff's § 1983 equal protection disparate treatment claim, Plaintiff's § 1983 equal protection hostile work environment claim against Defendants Bockelmann and Van Blarcum, and Defendant Wesolowski's cross-claim for malicious prosecution against Defendant Bockelmann. The Court also denied the County Defendants' motion for judgment as a matter of law in all other respects but granted their motion for a new trial with respect to Plaintiff's Title VII hostile work environment claim and her § 1983 equal protection hostile work environment claim against Defendant Ulster County, limited to incidents of sexual harassment that occurred in the workplace after Plaintiff returned to work in late December 2006, unless Plaintiff accepted a remittitur on these claims in the total amount of $80,000.00. *See* Dkt. No. 212 at 16-17. In addition, because the jury's verdict with respect to Plaintiff's § 1983 equal protection claim against Defendant Wesolowski based on his alleged assault of her in December 2005 was inherently inconsistent with the jury's verdict with respect to Defendant Wesolowski's cross-claim for malicious prosecution against Defendant Bockelmann, the Court *sua sponte* granted Defendant Wesolowski a new trial with respect to Plaintiff's § 1983 equal protection claim against him based solely on his alleged sexual assault of

her in December 2005. *See id.* at 17-18.

On September 21, 2012, the Court held a status conference with counsel. At that conference, Plaintiff's counsel informed the Court that Plaintiff would accept the offer of remittitur and, in addition, would agree to withdraw her pending EEOC claim and that the County Defendants had agreed not to appeal. *See* Text Minute Entry dated September 21, 2012. Plaintiff's counsel also informed the Court that Plaintiff would discontinue her action against Defendant Wesolowski. *See id.*[1] The Court granted the parties' request for permission to file additional papers regarding the issue of attorney's fees if the parties could not resolve that issue and also granted their request for time to work out the issue of affirmative relief. *See id.* Since the parties were unable to reach agreement on either issue, the following constitutes the Court's resolution of those issues.

## III. DISCUSSION

### A. Plaintiff's motion for affirmative relief

In her complaint, in addition to compensatory damages, Plaintiff also sought equitable affirmative relief. *See* Dkt. No. 1 at ¶¶ 89, 94, 99, 104, 110, 116, 123, 130. The issue of what equitable relief is appropriate in this case is for the Court to decide. *See, e.g., Broadnax v. City of New Haven*, 415 F.3d 265, 271 (2d Cir. 2005) (noting that neither party is entitled to a jury trial on that part of a Title VII claim that seeks equitable relief).

---

[1] Defendant Wesolowski reserved his right to appeal the dismissal of his cross-claim against Defendant Bockelmann. *See* Text Minute Entry dated September 21, 2012. On October 12, 2012, the Court entered a partial judgment as to Defendant Wesolowski's cross-claim. *See* Dkt. No. 222. Defendant Wesolowski filed a Notice of Appeal from that partial judgment. *See* Dkt. No. 224.

Plaintiff requests that the Court require Defendant Ulster County to take certain actions as affirmative relief to address preventive and corrective measures concerning a good faith internal complaint procedure, separate from Defendant Ulster County's procedure, revised training, revised EEO policies, and publishing of such policies to the officers. *See* Dkt. No. 176 at 1. She also asserts that Defendant Van Blarcum's[2] persistent refusal to acknowledge that a hostile work environment continues to exist demonstrates the need for the affirmative relief she seeks. *See* Dkt. No. 197 at 1. She also contends that it is clear that, given Defendant Van Blarcum's defiant attitude, he is incapable of administering or enforcing the corrective actions regarding policies, training, and enforcement necessary to eliminate the hostile work environment that exists. *See id.* at 1-2.

Specifically, Plaintiff seeks the following affirmative relief:

> 1. The appointment of an Ombudsman who would be responsible for (a) developing policies against discrimination, harassment and retaliation, (b) developing training materials and providing, and being present for, in-person training of both officers and supervisory officers, (c) appointing or overseeing an EEO Officer within the Sheriff's Department, (d) coordinating the County and Sheriff's Office EEO officers to provide consistent policies, procedures, and training, (e) providing an independent avenue of complaint and (f) implementing this Court's Order. The term of this appointment would be for the length of time that Defendant Van Blarcum serves as Sheriff and for two years thereafter.
>
> 2. Revision of Defendant County's and Defendant Sheriff's Department's current policies and procedures so that they accurately state the prevailing law as well as the coordination of inter-governmental procedures. Such changes should include anti-

[2] Although Plaintiff refers to "the Sheriff," rather than to any specific Defendant, because Defendant Van Blarcum is the current Sheriff, who would ultimately be responsible for implementing any affirmative relief that the Court were to award, the Court will refer to him by name.

retaliation, internal complaint procedures, external complaint procedures, i.e., Ombudsman/County Personnel Department, and the ability to complain to the United States Equal Employment Opportunity Commission, the New York State Division of Human Rights and Ulster County Human Relations Commission.

3. The establishment of an EEO Officer within the Sheriff's Department with the proper credentials and training. This EEO Officer would (a) review and make recommendations concerning hiring, firing, and affirmative actions toward promoting diversity and (b) review EEO policies and procedures concerning non-discrimination, non-sexual harassment, and non-retaliation.

4. The direct participation and involvement of the Ombudsman and Defendant County's Personnel Officer in the development of training materials and presentation of those materials to the administration, management and supervisors, i.e., Sheriff to Corporal.

5. The requirement that the Ombudsman and Defendant County would have ultimate responsibility and authority to review, accept and investigate complaints of discrimination, sexual harassment, and/or retaliation regardless of which method an individual uses to make a complaint

6. The establishment of joint Ombudsman, Sheriff's Department and County training specific to supervisors and all administrators. Such training would be directed at their responsibilities concerning the abatement of a hostile work environment and responsibility to escalate complaints. Such training should occur within sixty days.

7. Republish, and include in each paycheck, one time only, the updated policy against discrimination and retaliation including Defendant County's procedure and the right to complain to Defendant County specifically.

8. The reassignment of Internal Affairs responsibilities from Captain Jon Becker and specific training for all future Internal Affairs Officers concerning non-discrimination, non-sexual harassment and non-retaliation complaints as well as appropriate investigation techniques specific to investigating complaints concerning these issues.

> 9. The establishment of a procedure whereby the Ombudsman and EEO Officer review the qualification criteria, are involved in, and make recommendations concerning promotions and specialty team assignments.

*See* Dkt. No. 197 at 6-8.

In determining the need for prospective injunctive relief, the Court must consider the nature of the claims on which Plaintiff prevailed. As noted above, the Court determined that no reasonable jury could have concluded that Plaintiff had prevailed on the following claims: (1) her Title VII hostile work environment claim against Defendant Ulster County insofar as that claim was based on her allegation that Defendant Wesolowski sexually assaulted her in December 2005, (2) her Title VII hostile work environment claim against Defendant Ulster County insofar as that claim was based on any incidents that occurred prior to the alleged assault in December 2005, (3) her Title VII disparate treatment claim, (4) her Title VII retaliation claim, (5) her § 1983 equal protection disparate treatment claim, (6) her § 1983 equal protection hostile work environment claim against Defendants Bockelmann and Van Blarcum, and (7) her § 1983 equal protection hostile work environment claim insofar as that claim was based on her allegations that a hostile work environment existed in the jail prior to her return to work in late December 2006.

In addition, the Court granted the County Defendants' motion for a new trial on Plaintiff's Title VII hostile work environment claim and § 1983 equal protection hostile work environment claim against Defendant Ulster County limited to incidents of sexual harassment that occurred after she returned to work in late December 2006. Furthermore, the Court noted that, with respect to Plaintiff's § 1983 equal protection hostile work environment claim, she would have to prove that the hostile work environment existed as a result of a policy, custom or practice of

Defendant Ulster County. Finally, the Court provided Plaintiff with an opportunity to avoid a new trial on these two claims by accepting a remittitur in the amount of $80,000.00. Plaintiff chose to accept the remittitur.

In light of the Court's conclusions that Plaintiff had not adduced "any evidence to support her claim that the County Defendants did not select her, and instead selected a less qualified male co-worker, for any position for which she was qualified and for which she completed the application process" or any evidence that she had "ever suffered an adverse employment," the Court finds no support for granting Plaintiff's request for affirmative relief regarding Defendant Ulster County's policies related to disparate treatment discrimination.

Likewise, in view of the Court's finding that Plaintiff had not adduced any evidence that the County Defendants had taken any action against her in retaliation for having engaged in a protected activity that would have dissuaded a reasonable worker from engaging in such activity, the Court finds no support for granting Plaintiff's request for affirmative relief regarding Defendant Ulster County's policies related to retaliation.

Finally, although the Court concluded that it could not grant the County Defendants' motion for judgment as a matter of law with regard to Plaintiff's hostile work environment claims against Defendant Ulster County, it did grant the County Defendants' motion for a new trial with respect to those claims and further limited those claims to alleged incidents of sexual harassment that occurred after Plaintiff returned to work in late December 2006. The evidence adduced at trial to support Plaintiff's claims that she was subjected to a hostile work environment after she returned to work in December 2006 was barely sufficient to withstand the County Defendants' motion for judgment as a matter of law. Furthermore, as the Court noted, the jury's verdict with

respect to Plaintiff's Title VII hostile work environment claim and her § 1983 equal protection hostile work environment claim against Defendant Ulster County were inherently inconsistent and, thus, necessitated a new trial. In addition, the Court concluded that no reasonable jury could have found that Defendant Van Blarcum, who is the current Sheriff of Ulster County, was personally involved in creating or maintaining a hostile work environment in the jail after Plaintiff returned to work in late December 2006.[3] There can be no dispute that Defendant Ulster County has an obligation to ensure that its policies and procedures comply with the law. However, in light of the evidence adduced at trial, the Court finds no reason to require Defendant Ulster County to engage in what amounts to a comprehensive revamping of its policies and procedures regarding sexual harassment, in particular, and discrimination, in general. Accordingly, after carefully reviewing the entire record in this matter, the parties' submissions and the applicable law, and for the above-stated reasons, the Court denies Plaintiff's request for affirmative relief.

**B. Plaintiff's motion for an award of attorney's fees**

Plaintiff seeks $252,036.00 in attorney's fees, calculated at a rate of $300.00 per hour for the 840.12 hours that Mr. Ranni expended on her behalf between September 2009 and October 2012. From September 2009 to September 2010, Mr. Ranni was associated with the law firm of Bonacic, Krahulik, McMahon & Brady ("BKM&B"). During that time, Mr. Ranni expended 379.42 hours on Plaintiff's behalf for which Plaintiff seeks $113,826.00 in legal fees. Since

---

[3] Defendant Van Blarcum testified at trial that no supervisor had ever reported the existence of any sexual banter or pornography in the workplace, that such conduct was prohibited in the jail, and that Plaintiff had never complained to him about sexual harassment.

forming Ranni Law Firm in 2010, Mr. Ranni has performed 460.7 hours of legal services on behalf of Plaintiff for which she seeks $138,210.00.

In addition, Plaintiff seeks $185,000.00 in attorney's fees, calculated at hourly rates varying from $75.00 per hour to $275.00 per hour for the work that Mr. Ranni expended on Plaintiff's behalf while he was associated with the firm of Jacobowitz & Gubits, LLP between January 2006 and August 2008, and for work that other attorneys associated with the firm of Jacobowitz & Gubits, LLP performed on Plaintiff's behalf from February 4, 2011 through the filing of Plaintiff's motion for attorney's fees.

In addition to these attorney's fees, Plaintiff seeks costs in the total amount of $24,616.42, which consists of $9,674.17 in disbursements related to Mr. Ranni's representation of her while he was associated with the firm of BKM&B, $1,186.20 in disbursements related to Mr. Ranni's representation of her since he formed Ranni Law Firm and $13,756.05 in disbursements related to the work that attorneys associated with Jacobowitz & Gubits LLP performed on her behalf.

The County Defendants oppose Plaintiff's fee application on several grounds, including the following: (1) the hourly rates are too high, (2) her counsel's bills do not reflect a reasonable amount of time spent on the matter, (3) her counsel have engaged in unnecessary and duplicative work, and (4) Plaintiff's limited success. The County Defendants also oppose Plaintiff's request for costs as excessive and improperly documented. The Court will address these issues in turn.

***1. Reasonable hourly rate***

In *Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cnty. of Albany*, 522 F.3d 182 (2d Cir. 2008), the Second Circuit defined the term "reasonable hourly rate" as "the rate a paying

client would be willing to pay." *Id.* at 190. The court explained that, "[i]n determining what rate a paying client would be willing to pay, the district court should consider, among others, the *Johnson* factors;[4] it should also bear in mind that a reasonable, paying client wishes to spend the minimum necessary to litigate the case effectively." *Id.* Finally, the court instructed that "[t]he district court should . . . use th[e] reasonable hourly rate to calculate what can properly be termed the 'presumptively reasonable fee.'" *Id.*

Moreover, as the Second Circuit explained in *Farbotko v. Clinton Cnty. of N.Y.*, 433 F.3d 204 (2d Cir. 2005), "the equation in the caselaw of a 'reasonable hourly fee' with the 'prevailing market rate' contemplates a case-specific inquiry into the prevailing market rates for counsel of similar experience and skill to the fee applicant's counsel." *Id.* at 209. This inquiry "may . . . include judicial notice of the rates awarded in prior cases and the court's own familiarity with the rates prevailing in the district." *Id.* (citations omitted). However, the court must also evaluate the evidence that the parties proffer, keeping in mind that "the fee applicant has the burden of showing by 'satisfactory evidence – in addition to the attorney's own affidavits' – that the

---

[4] The *Johnson* factors are as follows:

> (1) [t]he time and labor required[;] . . . (2) [t]he novelty and difficulty of the questions[;] . . . (3) [t]he skill requisite to perform the legal service properly[;] . . . (4) [t]he preclusion of other employment by the attorney due to acceptance of the case[;] . . . (5) [t]he customary fee[;] . . . (6) [w]hether the fee is fixed or contingent[;] . . . (7) [t]ime limitations imposed by the client or the circumstances[;] . . . (8) [t]he amount involved and the results obtained[;] . . . (9) [t]he experience, reputation, and ability of the attorneys[;] . . . (10) [t]he "undesirability" of the case[;] . . . (11) [t]he nature and length of the professional relationship with the client[;] . . . [and] (12) [a]wards in similar cases.

*Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974).

requested hourly rates are the prevailing market rates." *Id.* (citation omitted). Finally, the Second Circuit has held that "current rates, rather than historical rates, should be applied in order to compensate for the delay in payment[.]" *LeBlanc-Sternberg v. Fletcher*, 143 F.3d 748, 764 (2d Cir. 1998) (citing *Missouri v. Jenkins*, 491 U.S. 274, 283-84, 109 S. Ct. 2463, 2469-70, 105 L. Ed. 2d 229 (1989)).

The Court has reviewed the parties' submissions as well as the applicable law regarding the issue of the reasonable hourly rate for the work that Plaintiff's attorneys performed on her behalf. Although courts in this District have differed as to the reasonable hourly rate, the trend is certainly away from the $210.00 per hour rate that has prevailed in this District for a number of years and is moving toward the $275.00 per hour rate for experienced attorneys. *See, e.g., Dotson v. City of Syracuse*, No. 5:04-CV-1388, 2012 U.S. Dist. LEXIS 140450, *13-*15 (N.D.N.Y. Sept. 28, 2012) (citing cases) (awarding $250 per hour for experienced attorneys). Based on its familiarity with the rates prevailing in this District as well as the information that Plaintiff has provided, the Court concludes that the following hourly rates are reasonable, given the time and experience of the attorneys involved, for the hours that they expended on Plaintiff's behalf:

**$250.00** per hour - Mr. Ranni, Mr. DiNardo, Mr. Eriksen
**$200.00** per hour - Mr. Fox
**$175.00** per hour - Ms. Babcock
**$150.00** per hour - Mr. Donnelly
**$125.00** per hour - Ms. Murphy
**$100.00** per hour - Mr. Revella
**$90.00** per hour - Mr. Lake

***2. Hours reasonably expended***

The Court has reviewed the total number of hours that Plaintiff's counsel expended on her behalf, as well as the County Defendants' objections thereto. The Court notes that Plaintiff's counsel have made every effort to decrease the number of hours of work for which Plaintiff seeks reimbursement. They have not billed for certain hours; they have reduced the number of hours for which they seek reimbursement to take into account any possible duplication of effort, and they have made across-the-board cuts in the number of hours they actually expended on Plaintiff's behalf.

The County Defendants argue that some of the billing entries are vague or conclusory and that, therefore, the Court should reduce the fee award accordingly. The Court disagrees. Although some of the entries lack specificity and detail, the Court concludes that such entries, when viewed in the context of the billing records as a whole, are sufficient to determine the subject matter of the work that counsel performed. *See Dotson*, 2012 U.S. Dist. LEXIS 140450, at *16 (citation omitted). Furthermore, the Court disagrees with the County Defendants' assertion that the use of nine attorneys is excessive. Plaintiff has explained that senior counsel assigned many legal tasks to attorneys with less experience to keep billing rates at a minimum. This was a prudent decision. As noted, Plaintiff has also discounted the number of hours for which Plaintiff seeks reimbursement to take account of any possible duplication of effort.

Finally, the County Defendants ask the Court to adjust the fee award based on Plaintiff's degree of success. As they note, Plaintiff originally pled nine causes of action, of which four were submitted to the jury. Although the jury awarded Plaintiff damages on all of those claims, as a result of the Court's resolution of the County Defendants' post trial motions, Plaintiff only

prevailed on two of those claims against one Defendant and for a very limited period of time. In addition, although the jury awarded her $465,000.00; Plaintiff ultimately accepted a remittitur in the amount of $80,000.00. Under these circumstances, the Court concludes that a 30% reduction is warranted.

For all of these reasons, the Court concludes that Plaintiff is entitled to the following attorney's fees as a prevailing party in this matter

| Attorney | Hourly Rate | Number of Hours | Total |
|---|---|---|---|
| Joseph J. Ranni | $250.00 | 955.22[5] | $ 238,805.00 |
| Robert DiNardo | $250.00 | 238.55 | $ 59,637.50 |
| Michael Fox | $200.00 | 220.05 | $ 44,010.00 |
| Michele Babcock | $175.00 | 203.95 | $ 35,691.25 |
| Peter Eriksen | $250.00 | 40.90 | $ 10,225.00 |
| Patrick Donnelly | $150.00 | 20.84 | $ 3,126.00 |
| John Revella | $100.00 | 28.51 | $ 2,851.00 |
| Carmen Murphy | $125.00 | 17.87 | $ 2,233.75 |
| Tobias Lake | $90.00 | 14.28 | $ 1,285.20 |
| **TOTALS** | | | **$ 397,864.70** |

Of this total award, $187,834.70 is for the work that the attorneys associated with Jacobowitz & Gubits, including Mr. Ranni during the time he was associated with that firm, performed on Plaintiff's behalf; $94,855.00 for the work that Mr. Ranni performed while he was

[5] Mr. Ranni's total of 955.22 hours is comprised of 115.10 hours that he expended while he was associated with Jacobowitz & Gubits, 379.42 hours that he expended while he was associated with BKM&B and 460.70 hours he expended after he formed Ranni Law Firm. These hours translate into fees of $28,775.00 for the work he performed while he was associated with Jacobowitz & Gubits, $94,855.00 for the work he performed while he was associated with BKM&B, and $115,175.00 for the work he performed after forming Ranni Law Firm.

associated with BKM&B; and $115,175.00 for the work that Mr. Ranni performed after he formed Ranni Law Firm. The Court will also deduct an additional $25,880.00 related to "Further Reductions" that Mr. DiNardo subtracted from the total amount of fees for that Plaintiff sought for the work that Jacobowitz & Gubits did on her behalf, thus reducing the total amount of fees for the work that Jacobowitz & Gubits expended on Plaintiff's behalf to $161,954.70. This reduces Plaintiff's total attorney's fee award to $371,984.70. Finally, the Court will reduce this total amount by 30% due to Plaintiff's limited success, thereby reducing the total award to **$260,389.29** calculated as follows:

| | |
|---|---|
| Work that Jacobowitz & Gubits performed | $ 113,368.29 |
| Work that Mr. Ranni performed while associated with BKM&B | $ 66,398.50 |
| Work that Mr. Ranni performed after he formed Ranni Law Firm | $ 80,622.50 |

Plaintiff also seeks costs and disbursements. The Court has reviewed Plaintiff's submissions regarding these costs and finds them to be reasonable and well-documented. Therefore, the Court awards Plaintiffs costs in the amount of **$24,616.42** calculated as follows:

| | |
|---|---|
| Costs and disbursements of Jacobowitz & Gubits | $ 13,756.05 |
| Costs and disbursements of BKM&B | $ 9,674.17 |
| Costs and disbursements of Ranni Law Firm | $ 1,186.20 |

## IV. CONCLUSION

After thoroughly reviewing the entire file in this matter, the parties' submissions, and the applicable law, and for the above-stated reasons, the Court hereby

**ORDERS** that Plaintiff's request for affirmative relief is **DENIED**; and the Court further

**ORDERS** that Plaintiff's motion for attorney's fees and costs is **GRANTED** in the

following amounts: **$260,389.29** in attorney's fees and **$24,616.42** in costs based on the calculations set forth in this Memorandum-Decision and Order; and the Court further

**ORDERS** that the Clerk of the Court shall enter judgment in favor of Plaintiff in the amount of **$40,000.00** on her Title VII hostile work environment claim and **$40,000.00** on her § 1983 equal protection hostile work environment claim against Defendant Ulster County and attorney's fees in the amount of **$260,389.29** and **$24,616.42** in costs against Defendant Ulster County and close this case.

**IT IS SO ORDERED.**

Dated: March 20, 2013
Syracuse, New York

Frederick J. Scullin, Jr.
Senior United States District Court Judge